**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| RAPLH JONES, et al., | : | |
| | : | **Civil Action No. 20-13056 (SRC)** |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| HESP SOLAR, et al., | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court upon Defendants' motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Ralph Jones and Philip Pietrafeso have opposed the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Defendants' motion will be granted in part and denied in part.

## I. BACKGROUND[1]

This case primarily revolves around a dispute over commission payments. Defendant HESP Solar ("HESP") is in the business of assisting clients with solar energy systems, and Defendant Abe Grohman ("Grohman") is HESP's founder and CEO. Plaintiffs Ralph Jones ("Jones") and Philip Pietrafeso ("Pietrafeso") were employees within the business development

---

[1] The background sets forth facts alleged in the Second Amended Complaint. The facts are taken as true for purposes of this motion to dismiss only.

department of HESP from November of 2014 through July 19, 2019. According to Plaintiffs, at the outset of their employment with HESP, HESP agreed to pay them a salary, as well as a commission for sales closed through Plaintiffs' efforts. In particular, HESP agreed to pay Plaintiff Pietrafeso an annual salary of $65,000, a $35,000 annual draw on commissions, a $.05 per watt commission on sales closed without Plaintiff Jones, and a $.04 per watt commission on sales closed in conjunction with Plaintiff Jones. Likewise, HESP agreed to pay Plaintiff Jones an annual salary of $12,000, a $6,000 annual draw on commissions, and a $.01 per watt commission on all sales in which he assisted in the sales process by supporting Plaintiff Pietrafeso. Any commissions due to Plaintiffs were scheduled to be paid when the jobs were completed, that is, when the solar energy equipment was installed for the customer.

In or around the beginning of 2016, Plaintiffs' first project that they sold was completed. However, HESP did not pay Plaintiffs a commission for this sale beyond the draws on commissions that they had previously received. Afterwards, throughout their employment for HESP, Plaintiffs completed numerous other projects for which they were entitled to commissions, but they were never paid any commissions on any sales that they closed beyond their draws on commissions. As such, Plaintiffs complained multiple times to their superiors about the fact that they had not been paid their commissions. Then, in 2018, Defendant Grohman, as well as HESP's Executive Vice President ("EVP"), Susan Brodie, attempted to renegotiate Plaintiffs' commission structures. However, these negotiations did not result in a new agreement. Rather, on or around July 1, 2019, EVP Brodie informed Plaintiffs that their employment would be terminated on July 19, 2019, explaining that this was due to the change in the New Jersey market for commercial solar projects. Then, while Plaintiffs were told by EVP

Brodie that they would still receive their unpaid commissions, Plaintiffs still have not received these payments.

Subsequently, on September 22, 2020, Plaintiffs brought suit against Defendants. After being allowed to amend their complaint on two occasions, Plaintiffs' Second Amended Complaint ("the Complaint") asserts four counts against Defendants: (1) failure to pay all wages due in violation of the New Jersey Wage Payment Law ("WPL"); (2) retaliatory discharge in violation of the New Jersey WPL; (3) breach of contract under New Jersey common law; and (4) wrongful termination in violation of New Jersey's public policy. Defendants then brought this motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims, except for the breach of contract claim against Defendant HESP.

## II.    DISCUSSION

### A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek dismissal of the entire Complaint, except for the breach of contract claim against Defendant HESP. Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet this pleading standard and avoid dismissal under Rule 12(b)(6), the Supreme Court has explained that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint will meet this plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While the complaint need not demonstrate that a defendant is probably liable for the wrongdoing to meet the requisite pleading

standard, allegations that give rise to the mere possibility of unlawful conduct are insufficient to withstand a motion to dismiss. Id.; Twombly, 550 U.S. at 557. Further, while a complaint is not required to include highly "detailed factual allegations," it must include more than mere "labels and conclusions." Twombly, 550 U.S. at 555. Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678.

Finally, in evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." Id. at 322. Being that the Complaint alleges four distinct counts, the Court will examine each of these claims to determine which counts, if any, meet the pleading standard necessary to survive this motion.

### B. Counts 1 and 2: Defendants' Alleged Violations of the New Jersey WPL

Both Count 1 and Count 2 of the Complaint are predicated on Defendants' alleged violations of the New Jersey WPL. More specifically, in Count 1, Plaintiffs assert that Defendants failed to pay them wages due, in violation of the WPL, and in Count 2, Plaintiffs claim that Defendants also violated the WPL through their allegedly retaliatory termination of Plaintiffs. As a result, Plaintiffs seek certain remedies laid out in the WPL – actual damages, liquidated damages in an amount equal to 200% of their actual damages, court costs, and attorney's fees. However, Defendants assert that there are two problems with these WPL claims and the damages sought under them. First, Defendants allege that the commissions being sought out by Plaintiffs in this action do not fall under the scope of the WPL. Second, Defendants aver that, even if Plaintiffs' claims for allegedly unpaid wages fall within the scope of the WPL, that

Plaintiffs should not be able to take advantage of the amendments to the WPL that were made after Plaintiffs were terminated. In particular, the 2019 amendments to the WPL are what now allow parties to both pursue a cause of action for retaliation, and also to receive liquidated damages, attorney's fees, and court costs, in addition to just actual damages. The Court will consider each of these points in turn.

### i. Whether Plaintiffs' Commissions Fall Within the Scope of the WPL

In support of Defendants' first point, that the WPL is entirely inapplicable to this matter, they point to the definition given for wages in the statute itself. Under the WPL, "'Wages' means the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis excluding any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J.S.A. 34:11-4.1(c). While Defendants do not dispute that the WPL does expressly state that commissions may be included within the statute's definition of "wages," they nevertheless argue that, in this context, Plaintiffs' commissions fall within the statute's exception for "supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto." N.J.S.A. 34:11-4.1(c).

In an attempt to demonstrate that Plaintiffs' requested commissions are incentive-based, and thus excluded from protection under the WPL, Defendants point to three cases where courts found that parties were not protected under the WPL for their commissions or bonuses earned in addition to a base salary. However, these cases are not dispositive to this matter. The first case cited by Defendants, Gaytan v. G&G Landscaping Constr., Inc., involved a plaintiff that was paid a salary of $18 per hour and who also originally hoped to recover any unpaid commissions for his work as a salesperson. 145 F. Supp. 3d 320, 328 (D.N.J. 2015). While the Court there did

conclude that commissions and bonuses are not covered under the WPL when they are a form of supplementary incentive pay, thereby granting summary judgment to the defendant to the extent that the plaintiff sought unpaid commissions, this conclusion was dicta, as by the time this motion was granted, the plaintiff submitted to the court that he was no longer seeking to recover any unpaid commissions, and was only seeking payment of his salary. Id. Further, despite the fact that the statutory language itself makes it clear that commissions can sometimes be covered under the WPL, the court there did not fully consider in what context that might occur (presumably because the plaintiff there did not argue this point), and simply concluded that the WPL did not apply.

As for the second case referenced by Defendants, Sluka v. Landau Uniforms, Inc., there, after the plaintiff was terminated, although he had already been paid his base salary, he brought suit seeking payment of two-year end payments that he contended were also part of his compensation package. 383 F. Supp. 2d 649, 651 (D.N.J. 2005). More specifically, the plaintiff's employment agreement in that case stated that he would be compensated through the following: (1) a base salary of $60,000, (2) a monthly one-percent commission on all net sales to his accounts, and (3) two year-end payments, comprised of a two-percent commission on net sales from new customers generated by the plaintiff, as well as a two-percent commission on the plaintiff's year-over-year increase in net sales. Id. at 652. There, the court found that the two year-end payments, although calculated as commission percentages, were clearly incentive-based, and therefore not covered by the WPL. Id. at 656. In so ruling, the court reasoned that "[t]he two percent commission based on new customers [was] designed to motivate and reward a salesperson who seeks out and creates new clients. Similarly, the two percent year-over-year increase payment [was] aimed to motivate and reward a salesperson who creates more business

6

each year." Id. Thus, while the court in Sluka did conclude that the plaintiff's commission-based payments were not "wages" under the WPL, that case is distinguishable from the facts at hand here. In context, those payments in Sluka were clearly incentive-based. As the court reasoned, those payments were essentially bonuses, paid all at once at the end of the year, and were in addition to the plaintiff's base salary and regular monthly commission for all net sales. Further, those year-end payments were particularly used to incentivize the plaintiff there to recruit new customers and create more business. Here, Plaintiffs have alleged that their commissions became due as a project was completed, and that the commission rate was the same for every project – whether it was for a repeat customer or a new one. Therefore, because of these distinctions, the Court need not consider Sluka to be dispositive to this motion.

The third case cited by Defendants, Van Winkle v. STORIS, No. A-5354-14T1, 2017 WL 837066 (N.J. Super. Ct. App. Div. Mar. 2, 2017), also need not be considered dispositive to this motion. There, the plaintiff was compensated through a base salary, plus commissions on sales made by his sales team, and had claimed that he had not received all of his commissions. Id. at *1-2. The court in Van Winkle ultimately held that the plaintiff could not recover under the WPL, based on its conclusion that these commissions were "supplementary incentives" under the statute's exception, because they were paid in addition to his base salary of $117,500 to incentivize sales. Id. at *4. Nevertheless, this case simply demonstrates the point that, in certain contexts, commissions can fall under the definition of "supplementary incentives," and perhaps particularly where the plaintiff already receives a substantial base salary. However, this case does not necessitate the Court here to conclude that Plaintiffs' commissions are also a form of supplementary incentives. Rather, Plaintiffs have alleged certain facts that may allow them to demonstrate that their commissions are "wages" under the WPL, that is, that they were part of

their direct monetary compensation for their services, not supplementary incentives that were calculated independently of their regular wages. For example, Plaintiffs have alleged that they were both given a draw on their commissions, essentially meaning that they were given part of their commissions as an advance that would ultimately be subtracted from any commissions eventually earned. This commission structure may support Plaintiffs' claim that their commissions were part of their direct source of compensation. Further, unlike in Van Winkle, where the plaintiff was already paid a substantial salary of over $117,000, here, Plaintiffs have alleged that their commissions were expected to comprise a substantial portion of their overall compensation. This allegation also seems to be supported by the size of the Plaintiffs' base salaries. For instance, Plaintiff Jones alleged that his base salary was only $12,000. Likewise, although Plaintiff Pietrafeso's alleged base salary of $65,000 is more substantial than Plaintiff Jones's salary, it is not overly substantial, such that one can still plausibly infer that the understanding between the parties was that the commissions were expected to make up a large portion of Plaintiffs' overall compensation package.

In response to these facts, Defendants assert that nothing in the WPL expressly states that the "supplementary incentives" exception is not applicable "based on the anticipated size of the commissions or whether the employee also received a draw." Defs.' Reply Br. at 2. While this is true, the Court nevertheless notes that these facts may very well support a conclusion that Plaintiffs' unpaid commissions were commissions of the sort protected by the WPL, that is, that they were a form of direct monetary compensation for their services, as opposed to a supplementary incentive calculatedly independently of Plaintiffs' regular wages.

Moreover, it is apparent from other cases that commissions, even when paid in addition to a base salary, are sometimes protected under the WPL. In particular, in one case referenced by

Plaintiffs, <u>Carita v. Mon Cheri Bridals, LLC</u>, Civ. No. 10-2517, 2012 WL 2401985, at \*10 (D.N.J. June 25, 2012), the plaintiff, a sales manager, was paid a base salary, as well as a percentage of the sales made by the salespeople who worked under her direction. When the plaintiff there sought recovery for any of those commissions that remained unpaid at the time of her termination, the Court found that those commissions were in fact covered under the WPL. <u>Id.</u> at \*11. In so deciding, the court explained:

> The Wage Act is remedial legislation and therefore it should be given a broad construction. Moreover, exceptions should be narrowly construed. The burden of proving that an exemption applies should be imposed on the employer. Despite the fact that an employer and an employee may refer to certain payments as a "commission," this is not dispositive. . . . Rather, the Court should look to the purpose of the payment.

<u>Id.</u> (internal citations omitted). The Court then went on to explain that the commission payments there should not be characterized as supplementary incentives for two reasons. <u>Id.</u> As for the first reason, the defendant in that case agreed that the commissions were actually part of the plaintiff's salary, as a means to compensate her for managing those under her charge. <u>Id.</u> Then, in explaining its second reason, the court distinguished the facts present in its case from the facts in one of the cases cited by Defendants here, <u>Sluka</u>. <u>Id.</u> In particular, the court in <u>Carita</u> discussed the fact that the same percentage applied to all of the commissions that the plaintiff in <u>Carita</u> earned, unlike in <u>Sluka</u>, where the disputed payments were based on a higher than normal commission rate, beyond the usual rate that the plaintiff in <u>Sluka</u> received for existing customers, making it clear that those particular payments were meant to serve as "an incentive above and beyond" the rest of the plaintiff's compensation. <u>Id.</u> The court thus found that the same could not be said for the commission payments in <u>Carita</u>. <u>Id.</u> Some of this same logic might potentially be applied to Plaintiffs' case here as well.

Here, beginning with the court's first reason for its conclusion in <u>Carita</u>, while clearly Plaintiffs' commissions were not used to compensate them for supervising other employees, facts have been alleged that may support Plaintiffs' conclusion that their commissions were meant to be part and parcel of their salary. For example, as discussed, the fact that they received draws on their commissions and that, according to Plaintiffs, the commissions were meant to comprise a large portion of their overall compensation package, may support a finding that their commissions were meant to be part of their main salary. Then, as for the court's second point in <u>Carita</u>, that the same percentage applied to all of the plaintiff's commissions there, regardless of whether the sale was made to a new or repeat customer, that was the case for Plaintiffs here too. While, of course, Plaintiff Jones and Plaintiff Pietrafeso were allegedly promised different commission rates based on the fact that Plaintiff Pietrafeso was a more senior employee, Plaintiffs' commission rates here did not vary based on the type of customer. Rather, the only variance within one plaintiff's commission structure was that Plaintiff Pietrafeso made one less cent per watt for sales closed with Plaintiff Jones, essentially sharing a part of his usual commission with Plaintiff Jones in such instances. As such, while the Court need not, and will not, determine at this motion to dismiss stage whether or not Plaintiffs' commissions were incentive-based, these facts may ultimately support a conclusion that these commissions are in fact within the scope of the WPL.

In conclusion, at this motion to dismiss stage, where the Court is acting without a full factual record, the Court cannot determine the true purpose of Plaintiffs' commissions. Rather, this factual issue requires a close and careful examination of the record that is simply not possible at this stage of the proceedings. Moreover, based on the statutory language of the WPL itself, the distinctions between the facts present here and in the cases cited by Defendants, and

the court's reasoning in Carita, Plaintiffs have put forth at least a plausible claim that their requested commissions can be properly characterized as covered "wages" under the WPL. As such, this claim is not fit for dismissal at this stage, and therefore, this part of Defendants' motion must be denied.

> ii. **Whether the Amendments to the WPL may be Utilized by Plaintiffs in their WPL Claims**

Next, Defendants also claim that, even if Plaintiffs' claims fall within the scope of the WPL, that Plaintiffs cannot rely on the amendments to the WPL that were passed after they were already terminated. As a matter of background, before the WPL was amended, it did not include an explicit right for private parties to bring a cause of action against an employer who had allegedly violated the statute. Rather, the only cause of action that was expressly mentioned in the WPL before it was amended was a civil suit for lost wages for "employee[s] with whom any agreement in violation of [section 34:11-4.7 of the statute] [was] made by any . . . employer . . ." N.J.S.A. 34:11-4.7. Nevertheless, courts previously held that employees had an implied right to bring suit under the statute against their employers for unpaid wages. See, e.g., Mulford v. Comput. Leasing, Inc., 334 N.J Super. 385, 393-94 (N.J. Super. Ct. Law Div. 1999) ("[T]he statute is intended to allow a private right of action (a civil action) for a violation thereof to the employee against the employer and its managing officers for wages not paid as provided therein. . . . Employees are the obvious special beneficiaries of the statute; and to allow the civil action will plainly further its purpose.").

However, because the private cause of action under the WPL used to be implicit, plaintiffs historically could only recover actual damages – that is, their lost wages under the statute. Then, on August 6, 2019, the Wage Theft Act ("WTA") was signed into law, which made amendments to both the WPL and another state statute, the New Jersey Wage and Hour

Law ("WHL"). While many changes were made through the enactment of the WTA, two amendments are particularly relevant to this case. First, the WTA created a private cause of action under the WPL for retaliation by an employer, whereas previously plaintiffs could only sue for lost wages under the WPL, not retaliation. <u>See</u> N.J.S.A. 34:11-4.10(c) ("[T]he employee may recover in a civil action . . . any wages lost because of any retaliatory action taken in violation of subsection a. of this section . . . ."). Second, the WTA made the previously implicit right for a private party to bring suit for lost wages explicit, and also allowed plaintiffs to seek not just their lost wages, but liquidated damages up to an amount equal to 200% of their actual damages, court costs, and attorney's fees. <u>See</u> N.J.S.A. 34:11-4.10(c) ("[T]he employee may recover in a civil action the full amount of any wages due, . . . plus an amount of liquidated damages equal to not more than 200 percent of the wages lost or of the wages due, together with costs and reasonable attorney's fees as are allowed by the court . . . ."). Plaintiffs concede that they were both terminated a few weeks before the WTA was enacted, on July 19, 2019. As such, at this point, it appears that Plaintiffs would only be able to benefit from these changes to the WPL if the WTA were considered to apply retroactively. The Court will now examine whether that is the case.

Under New Jersey law, "[s]ettled rules of statutory construction favor prospective rather than retroactive application of new legislation." <u>James v. N.J. Mfrs. Ins. Co.</u>, 216 N.J. 552, 563 (N.J. 2014). "This preference is based on [the State's] long-held notions of fairness and due process." <u>Cruz v. Cent. Jersey Landscaping, Inc.</u>, 195 N.J. 33, 45 (N.J. 2008). <u>See also</u> <u>Gibbons v. Gibbons</u>, 86 N.J. 515, 522 (N.J. 1981) (quoting 2 Sutherland, <u>Statutory Construction</u>, § 41.02 at 247 (4th ed. 1973)):

> "It is a fundamental principle of jurisprudence that retroactive application of new laws involves a high risk of being unfair. There is general consensus among all people that

notice or warning of the rules that are to be applied to determine their affairs should be given in advance of the actions whose effects are to be judged by them. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible as to law which has not been made."

Nevertheless, there are certain instances in which courts will find a statute to apply retroactively. More specifically, there are three circumstances in which courts will conclude that a statute should potentially be given retroactive effect: "(1) when the Legislature expresses its intent that the law apply retroactively, either expressly or implicitly; (2) when an amendment is curative; or (3) when the expectations of the parties so warrant." James, 216 N.J. at 563. Then, even if one of the above three circumstances apply, courts will still not apply a statute retroactively when doing so will "'result in either an unconstitutional interference with vested rights or a manifest injustice.'" Id. (quoting D.C., 146 N.J. 31, 50 (N.J. 1996)). The Court will separately examine the applicability of each of the above three possibilities for retroactive application of the WTA.

First, beginning with legislative intent, "expression of legislative intent may be either express, that is[,] stated in the language of the statute or in the pertinent legislative history, or implied, that is, retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation." Gibbons, 86 N.J. at 522 (internal citations omitted). Moreover, "[w]hen the Legislature is silent on the issue, a prospective intent 'may be inferred from [the] knowledge that courts *generally* will enforce newly enacted substantive statutes prospectively, unless [the Legislature] clearly expresses a contrary intent.'" Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 388 (N.J. 2016) (quoting Maeker v. Ross, 219 N.J. 565, 578 (N.J. 2014)) (emphasis in original).

Here, the plain language of the WTA does not express an intent by the legislature to have the amendments apply retroactively. Rather, the WTA itself clearly states that, except for Section 13 of the Act, which is not relevant to this matter, that "[t]his Act shall take effect immediately . . ." N.J. S. 1790 P.L. 2019, § 14.  As the New Jersey Supreme Court explained in Cruz, "these words bespeak an intent contrary to, and not supportive of, retroactive application." 195 N.J. at 48. Further, "had the Legislature intended an earlier date for the law to take effect, that intention could have been made plain in the very section directing when the law would become effective." James, 216 N.J. at 568. Indeed, the New Jersey Supreme Court has repeatedly held this type of language to mean that "newly enacted provisions 'will apply to claims that arise immediately after the effective date of the amendment . . . .'" Johnson, 226 N.J. at 389 (quoting Cruz, 195 N.J. at 49). Moreover, "[w]hen the Legislature addresses whether a statute should apply retroactively to the law's enactment, that expression of legislative intent should be given effect absent a compelling reason not to do so." James, 216 N.J. at 564. As such, the fact that the WTA expressly states that it is to take effect immediately indicates that the legislature intended that the statute would only be applied prospectively.

Plaintiffs also have not pointed to anything in the legislative history that supports a finding of legislative intent in favor of retroactive application. Then, as for whether the legislature implicitly intended that the WTA be applied retroactively, Plaintiffs do seem to argue that retroactive application is necessary to make the statute workable or to give it the most sensible interpretation. More specifically, Plaintiffs assert that, because the WTA states that it is to become effective immediately and that the statute of limitations for claims was amended to a six-year timeframe, that by not allowing for retroactive application of the statute, this causes the six-year limitations period to not be given immediate effect. Rather, as Plaintiffs explain, for

example, were an employee to bring a WPL claim that arose over two years ago (before the amendment was enacted), his claim would be time-barred under the previous two-year limitations period, thus causing the six-year statute of limitations to have not gone into effect yet. However, this argument by Plaintiffs is flawed. In stating that the WTA was to be given immediate effect, the legislature made it clear that its goal was for the WTA's provisions, included the amended six-year limitations period, to apply immediately to any claims arising *at the time of the WTA's enactment or thereafter*. Plaintiffs cannot logically argue that because a longer statute of limitations period was created by the WTA that this necessarily means that the WTA must apply retroactively. Indeed, if that were the legislature's intent, then it could have easily made that clear. For instance, as opposed to simply stating that the act should take effect immediately, the legislature could have stated that the statute should be given retroactive application to allow the six-year limitations period to apply to claims that arose before the WTA was enacted. Thus, there is no reason to conclude that retroactive application is necessary to make the statute workable or to give it the most sensible interpretation, and therefore, the Court cannot infer that the legislature implicitly intended to have the WTA apply retroactively.

Next, as for the second instance in which courts may impose retroactive application of a new statute, the amendments made by the WTA were also not curative. "'The 'curative' exception comes into play when a statute amends a previous law which is unclear or which does not effectuate the actual intent of the Legislature in adopting the original act.'" D.C., 146 N.J. at 51 (quoting Schiavo v. John F. Kennedy Hosp., 28 N.J. Super. 380, 386 (N.J. Super. Ct. App. Div. 1992)). The "purpose [of a curative amendment] is 'to remedy a perceived imperfection in or misapplication of a statute and not to alter the intended scope or purposes of the original act.'" Johnson, 226 N.J. at 388 (quoting Nelson v. Bd. of Educ of Twp. of Old Bridge., 148 N.J. 358,

370 (N.J. 1997)). See also James, 216 N.J. at 564 (quoting 2 Sutherland, Statutory Construction, § 41.11 at 417 (5th ed. 1991)) ("'Generally, curative acts are made necessary by inadvertence or error in the original enactment of a statute or in its administration.'"). As such, merely curative amendments will "'not alter the [previous] act in any substantial way . . .'" Id. (quoting 2nd Roc-Jersey Assocs. v. Town of Morristown, 158 N.J. 581, 605 (N.J. 1999)). Here, the amendments in the WTA were not meant to simply clarify or reaffirm the WPL and WHL. Rather, they greatly broadened these statutes in a substantial way, such as by adding the expanded remedies that Plaintiffs seek in this very case. In doing so, the amendments changed the previously settled law, which historically only gave a plaintiff the opportunity to recoup his actual damages for lost wages in a private suit against an employer under the WPL.

Finally, the expectations of the parties in this matter do not warrant retroactive application of the WTA. To determine whether this circumstance applies, "a court will look at the controlling law at the relevant time and consider the parties' reasonable expectations as to the law." Johnson, 226 N.J. at 389. "An expectation of retroactive application 'should be strongly apparent to the parties in order to override the lack of any explicit or implicit expression of intent for retroactive application.'" Id. (quoting James, 216 N.J. at 573). "For example, a party may not rely on pending legislation because '[t]he possibility that a bill might become law is an expectation built on uncertainty until it happens.'" Id. (quoting James, 216 N.J. at 573). Here, Plaintiffs have not even claimed that they expected the WTA to apply retroactively or that they somehow anticipated that they would be able to benefit from this later-enacted statute.

However, in a belated notice of supplemental authority filed by Plaintiffs, Plaintiffs brought to the Court's attention an unpublished New Jersey Superior Court opinion, Castro v. Linden Bulk Transportation, LLC, which Plaintiffs believe supports their proposition that the

WPL should be applied retroactively. No. ESX L 006141-19 (N.J. Sup. Ct. Law Div. Jan. 4, 2021). The Court there held that the liquidated damages provision of the WPL could be applied retroactively to the plaintiff's claim, based on its conclusion that the amended provision "did not create any new rights, but merely strengthened the remedies available for already actionable conduct." Id. at *10. However, in so ruling, the court focused only on the *constitutionality* of potentially applying the WPL retroactively, not whether the legislature intended that the WPL be given retroactive application. Indeed, in support of its finding, the court in Castro relied upon two other New Jersey cases that also exclusively focused on the constitutionality of applying new statutes retroactively. Id. at *11. In the first, State, Dept. of Envtl. Prot. v. Ventron Corp., the Supreme Court of New Jersey noted that "the Legislature ha[d] expressly declared that the Spill Act should be given retroactive effect." 94 N.J. 473, 498 (N.J. 1983). As such, since "when the Legislature has clearly indicated that a statute should be given retroactive effect, the courts will give it that effect unless it will violate the constitution or result in manifest injustice[,]" the Court then went on to focusing on the constitutionality of applying the Spill Act retroactively. Id. In doing so, the court there found that "the Spill Act does not so much change substantive liability as it establishes new remedies for activities recognized as tortious both under prior statutes and the common law . . . [and that a] statute that gives retrospective effect to essentially remedial changes does not unconstitutionally interfere with vested rights." Id. at 499 (internal citations omitted).

Similarly, the second case relied upon by the court in Castro, State, Dept. of Envtl. Prot. v. Arlington Warehouse, also focused on the Spill Act, a statute which holds responsible parties strictly liable, whether their acts "occurred prior or subsequent to the original enactment of the Spill Act." 203 N.J. Super. 9, 13 (N.J. Super. Ct. App. Div. 1985). Thus, there too, the court only

considered the constitutionality of applying the statute retroactively, and ultimately held that because it was "remedial only, providing a remedy as an alternative to common law damages," there was no constitutional issue with its retroactive application, as "a remedial or procedural statute may be given retrospective effect without infringement of vested rights, provided that the new statutory remedy is for redress of a pre-existing actionable wrong." Id. at 13-14.

Therefore, in both of the cases relied upon by the court in Castro, it was clear that the legislature intended for the statute to apply retroactively and the only question was a constitutional one. As such, the court in Castro did not appear to consider whether the legislature intended for the WTA to apply retroactively. Yet, as previously explained, there is no indication here that the legislature intended for the WTA to apply retroactively. To the contrary, the WTA states that it is to be given effect immediately, and New Jersey courts have historically considered this type of language to demonstrate that the legislature intended a statute to only apply prospectively. Further, even if the Court were to consider the constitutionality of applying the WTA retroactively, it would not agree with the court's reasoning in Castro that the WTA "did not create any new rights, but merely strengthened the remedies available for already actionable conduct." Castro, No. ESX L 006141-19, at *10. The WTA did in fact create a new right – the cause of action for retaliation. Moreover, the WTA also now allows plaintiffs to seek liquidated damages, and liquidated damages in the amount of up to 200% of actual damages essentially serve as a form of punitive damages, which are meant to punish and deter illegal conduct. Punitive damages do not simply serve as an additional remedy and allowing them to be collected retroactively would only serve to unfairly punish behavior that, at the time it was committed, would have only subjected a wrongdoer to, at the most, liability for an employee's

lost wages. For these reasons, the Court does not find the court's conclusion in Castro to be persuasive.

Then, because legislative intent does not support retroactive application of the WTA, the amendments were not curative, and the parties' expectations do not warrant retroactive application, the Court finds that the WTA should be considered to only apply prospectively. Further, because the Court concludes that the WTA should not be applied retroactively, there is no need to discuss the second issue regarding retroactivity, that is, whether retroactive application would lead to manifest injustice.

Moreover, on many other occasions, courts in this district have come to the same conclusion as this Court, that the WTA (except for Section 13) is not to be applied retroactively.[2] See Magee v. Francesca's Holding Corp., Civ. No. 17-565 (RBK/JS), 2020 WL 2768679, at *2-4 (D.N.J. May 28, 2020) (relying on New Jersey precedent, concluding that the WTA should not be applied retroactively, particularly because the WTA states that it should take effect "immediately"); Vazquez v. Spain Inn, Inc., Civ. No. 19-452, 2019 WL 5258197, at *3 n.6 (D.N.J. Oct. 17, 2019) (same); Buchspies v. Pfizer, Inc., Civ. No. 18-16083, 2019 WL 5078853, at *4 n.6 (D.N.J. Oct. 10, 2019) (same); see also Perloff, 2020 WL 7183552, at *1 ("This Court

___

[2] While Plaintiffs do reference one case in this district, Doe v. Banc, Jack & Joe, LLC, 17-cv-03843 (KSH) (CLW), 2020 WL 2832621, at *7 (D.N.J. June 1, 2020), which applied the amended statute of limitations period (six years, as opposed to the pre-amendment two year time-limit) to a claim filed under the WHL in 2017, before the WTA was enacted, the court there did not actually analyze the issue of whether the WTA was meant to apply retroactively. Rather, it simply applied the six-year statute of limitations without considering the issue, which presumably was not brought to the court's attention by any of the parties. Further, one can safely assume that the author of the opinion, Judge Katherine Hayden, would likely agree that the WTA is not meant to be applied retroactively, as in another case from Judge Hayden's docket that was decided a few months later, although the opinion itself was written by Magistrate Judge Cathy Waldor, the court's opinion then held that the WTA is only to apply prospectively. See Perloff v. SoMo Audience Corp., No. 19-cv-09172-KSH-CLW, 2020 WL 7183552, at *1 (D.N.J. Aug. 7, 2020).

held that the relevant provisions of the WTA do not apply retroactively to Plaintiff's claims . . .”); Wang v. Chapei LLC, Civ. No. 15-2950 (MAS) (DEA), 2020 WL 468858, at *6 n.12 (D.N.J. Jan. 29, 2020) (internal citation omitted) (“There is no indication that the statute extending the limitations period [the WTA] should be given retroactive effect, and the parties do not dispute this.”).

Plaintiffs nevertheless claim that these cases are irrelevant. Plaintiffs' primary argument here is that these cases are flawed because none of them considered another section of the WHL. More specifically, N.J.S.A. 34:11-56a25.2, a portion of the WHL, states that:

> In any action or proceeding commenced prior to or on or after the date of the enactment of this act based on any act or omission prior to or on or after the date of the enactment of this act, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under this act, if he pleads and proves that the act or omissions complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval or interpretation by the Commissioner of the Department of Labor and Industry or the Director of the Wage and Hour Bureau, or any administrative practice or enforcement policy of such department or bureau with respect to the class of employers to which he belonged.

Since this section of the WHL seems to imply that actions can be brought under the statute for acts or omissions that took place “prior to . . . the date of the enactment of [the] act,” Plaintiffs assert that the WTA was in fact meant to apply retroactively, and that the above cases are irrelevant because they did not consider this section of the WHL. However, as Defendants pointed out in their reply brief, this section of the WHL was passed in 1966, years before the WTA was even enacted. As such, N.J.S.A. 34:11-56a25 is immaterial to this case for two reasons. First, it applies only to the WHL, which discusses overtime and minimum wage requirements, not the WPL. And while the WTA did amend both of those statutes, this case only involves the WPL – a completely different statute, Second, even if this section would affect whether the WHL was meant to apply retroactively in 1966, it is entirely irrelevant as to whether

the WTA, passed over fifty years later in 2019, is meant to be applied retroactively. This language from N.J.S.A. 34:11-56a25 may have emphasized an intent by the legislature in 1966 to apply the WHL retroactively, but it certainly does not tell the courts anything about what the legislature in 2019 intended regarding the effective date of the WTA. As such, it makes complete sense that the above courts did not consider this section of the WHL when determining whether the WTA is meant to be applied retroactively, as it has no bearing on the issue.

Plaintiffs also argue that the court's decision in one of the above-referenced cases where the court found that the WTA should not be applied retroactively, <u>Buchspies</u>, is dicta. However, the Court here fails to understand how the <u>Buchspies</u> decision is dicta, as the court there expressly concluded that, because the plaintiff filed suit before the WTA was enacted, he was bound by the pre-amendment statute of limitations under the WHL, and therefore that he could not recover overtime pay for any overtime due beyond the pre-amendment limitations period. 2019 WL 5078853, at *4. This decision appears to have directly affected the plaintiff's claims, by requiring him to "tailor any amended pleading to reflect the fact that he cannot recover for any alleged overtime violations that may have occurred [beyond the statute of limitations time-frame] . . ." <u>Id.</u>

For the foregoing reasons, the Court concludes that the WTA cannot be applied retroactively. As such, because Plaintiffs did not plead in the Complaint that any of the alleged unpaid commissions became due after the WTA was enacted (and simply mentioned for the first time in their opposing papers the possibility that some of Plaintiffs' claims for unpaid commissions might have accrued after the WTA was enacted), Plaintiffs' WPL claim, to the extent that it requests damages beyond actual damages, is dismissed without prejudice. However, Plaintiffs will be granted leave to replead this claim to the extent that it seeks additional damages

by filing a Third Amended Complaint. Then, as for Plaintiffs' claim for retaliation under the WPL, this will be dismissed with prejudice. An amended pleading would be futile as to the retaliation claim because, as Plaintiffs have conceded, "Plaintiffs' retaliation claims inarguably precede the effective date of that law [the WTA] . . . ." Pls.' Opp'n Br. at 13. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (holding that upon granting a defendant's motion to dismiss a deficient complaint, a district court need not grant the plaintiff leave to amend if amendment would be inequitable or futile). Moreover, because the Court finds that the retaliation claim under the WPL should be dismissed with prejudice, there is no need to consider the parties' arguments as to whether the McDonnel-Douglas test ought to apply at the motion to dismiss stage.

### C. Count 3: Breach of Contract

Then, in Count 3 of the Complaint, Plaintiffs assert a claim for breach of contract against both Defendant HESP and Defendant Grohman, the founder and CEO of HESP. As part of their motion to dismiss, Defendants request dismissal of this claim against Defendant Grohman, but do not seek dismissal of the claim as against Defendant HESP at this time. In support of their assertion that the breach of contract claim should be dismissed against Defendant Grohman, Defendants correctly note that Plaintiffs have in no way asserted that they entered into a contract with Defendant Grohman in his personal capacity; rather, Plaintiffs contracted directly with HESP, a limited liability company. Further, Plaintiffs have also not put forth any factual allegations that support an inference that the corporate veil should be pierced in this situation and that Defendant Grohman ought to be individually liable for any contract breaches allegedly caused by HESP. Plaintiffs do not even appear to oppose Defendants' motion to dismiss to the extent that it seeks to dismiss Plaintiffs' breach of contract claim as against Defendant Grohman.

As such, it is clear that this breach of contract claim against Defendant Grohman must fail. Further, because there is no indication that allowing Plaintiffs to replead this claim would cure these deficiencies, as Plaintiffs have not even suggested any basis for Defendant Grohman's individual liability for the breach of contract claim, leave to further amend will not be granted and the breach of contract claim in Count 3 as against Defendant Grohman will be dismissed with prejudice. See Grayson, 293 F.3d at 108.

However, Defendant Grohman will not be dismissed from the action, as Plaintiffs' WPL claim has not been dismissed in its entirety and claims for unpaid wages under the WPL can potentially be brought against an officer of the employing company, such as Defendant Grohman. This is made clear by the definition given for an "employer" in the WPL itself, which states that "[f]or the purposes of this act the officers of a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation." N.J.S.A. 34:11-4.1(a). Further, Defendants have conceded that corporate officers can be liable for unpaid wages under the WPL, but simply argued that the WPL does not apply. Defs.' Br. at 18. Thus, because the Court finds that Plaintiffs' WPL claim for unpaid wages will not be dismissed at this time, the WPL claim may still be asserted against Defendant Grohman, and thus he will not be dismissed from the case at this time.

### D. Count 4: Wrongful Termination in Violation of New Jersey Public Policy

In the final count of the Complaint, Count 4, Plaintiffs assert wrongful termination in violation of New Jersey common law. More specifically, Count 4 alleges that Plaintiffs were wrongfully discharged in violation of a clearly mandated public policy. As explained by the New Jersey Supreme Court in Pierce v. Ortho Pharm. Corp., "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." 84 N.J.

58, 72 (N.J. 1980). <u>See also</u> <u>MacDougall v. Weichert</u>, 144 N.J. 380, 391 (N.J. 1996) ("A basic requirement of the wrongful discharge cause of action is that the mandate of public policy be clearly identified and firmly grounded."). In determining what constitutes a clear mandate of public policy, courts may look to legislation, administrative rules, regulations, or decisions, judicial decisions, and occasionally, a professional code of ethics, but these types of sources will not always necessarily express a clear mandate of public policy. <u>Pierce</u>, 84 N.J. at 72. Thus, the determination of whether something should be considered a clear mandate of public policy must be handled by the courts on a case-by-case basis. <u>Id.</u> Nevertheless, to put forth such a claim, the employee must identify "a specific expression of public policy." <u>Id.</u> As such, "[i]f an employee does not point to a clear expression of public policy, the court can grant a motion to dismiss or for summary judgment." <u>Id.</u> at 73.

A "cause of action under <u>Pierce</u> has been recognized if the firing was in retaliation for an employee's refusal to commit an act which would violate a statute or for assertion of a right protected by legislation, or for firings which were 'invidiously discriminatory.'" <u>Schwartz v. Leasametric, Inc.</u>, 224 N.J. Super. 21, 30 (NJ. Super. Ct. App. Div. 1988) (quoting <u>Citizens State Bank of N.J. v. Libertelli</u>, 215 N.J. Super. 190, 195 (N.J. Super. Ct. App. Div. 1987)). For instance, in <u>Lally v. Copygraphics</u>, the New Jersey Supreme Court held that a plaintiff had a cause of action for wrongful discharge based on an alleged retaliatory discharge based on his filing of a workers' compensation claim. 85 N.J. 668, 670 (N.J. 1981). There, <u>Pierce</u>'s requirement for establishing a clear mandate of public policy was easily met, as a New Jersey statute expressly stated that it was "unlawful for an employer . . . to discharge or in any other manner discriminate against an employee as to his employment because such employee has

claimed or attempted to claim workmen's compensation benefits from such employer . . . ." N.J.S.A. 34:15-39.1.

Similarly, in Cerracchio v. Alden Leeds, Inc., the New Jersey Superior Court held that, "under Pierce, an employee in New Jersey may maintain a private action . . . for retaliatory discharge as a result of the filing of an OSHA complaint[,]" as there "is a strong public policy in New Jersey favoring safety in the workplace." 223 N.J. Super. 435, 445-46 (N.J. Super. Ct. App. Div. 1988). As another example, in Velantzas v. Colgate-Palmolive Co., the New Jersey Supreme Court concluded that if one was terminated in retaliation for her attempts to determine whether gender discrimination had barred her advancement, a Pierce cause of action would exist, as New Jersey public policy protects those who are in good faith pursuing information relevant to a discriminatory discharge. 109 N.J. 189, 192 (N.J. 1988).

On the other hand, a cause of action under Pierce is "unavailable where discharge resulted from disputes which were internal and implicated only private interests." DeVries v. McNeil Consumer Prods. Co., 250 N.J. Super. 159, 171 (N.J. Super. Ct. App. Div. 1991). For example, in Schwartz, the New Jersey Superior Court found that termination of an employee to avoid paying commissions does not violate a clear mandate of public policy, and thus does not support a cause of action under Pierce. 224 N.J. Super. at 30. Likewise, in Alexander v. Kay Finlay Jewelers, Inc., the court found that termination of an employee for commencing a civil suit against an employer as a means of resolving a salary dispute does not violate a clear mandate of public policy under Pierce. 208 N.J. Super. 503, 505 (N.J. Super. Ct. App. Div. 1986). In holding that way, the court specifically noted that there was "no statutory or regulatory proscription against a firing in retaliation for the institution of a civil action against the employer

as a means of resolving a salary dispute" and that the dispute "involved a matter having no significance beyond the private interests of plaintiff and defendant." Id. at 508.

Here, Plaintiffs have not successfully shown that they were terminated in violation of a clear expression of public policy. Rather, the Complaint only alleges in a conclusory fashion that "[t]erminating an employee for inquiring as to the status of earned but unpaid commissions and/or non-discretionary bonuses constitutes a termination in violation of a clearly mandated public policy." 2nd Am. Compl. ¶ 72. Even if the Court were to assume that Plaintiffs meant to base this count on their claim for unpaid wages under the WPL, this also cannot support Plaintiffs' claim for wrongful discharge, as terminating an employee for complaining about allegedly unpaid commissions is not a violation of a clearly mandated public policy.

As the New Jersey Superior Court explained in Schwartz, three potential scenarios may create a Pierce cause of action: (1) where an employee was terminated in retaliation for refusing to commit an illegal act; (2) where an employee was terminated in retaliation for asserting a legislatively protected right; and (3) when an employee was fired for a discriminatory reason. 224 N.J. Super. at 30. Plaintiffs here have not claimed that they were terminated as retaliation for refusing to commit an illegal act, or that their terminations were somehow discriminatory. Further, while the WPL, even in its pre-amendment state, does allow plaintiffs to seek actual damages for lost wages, before it was amended by the WTA in 2019, it did not include a right to be protected against retaliatory discharge for inquiring about allegedly unpaid wages.[3] In this respect, Plaintiffs' case is unlike the facts in Lally, for example, where the court allowed the

---

[3] While the WPL has since been amended to protect employees from retaliatory discharge for complaining about allegedly unpaid wages, as previously explained, because Plaintiffs were terminated prior to the enactment of this amendment, they cannot take advantage of this change to the WPL. As such, in determining whether Plaintiffs can assert a claim for wrongful discharge under New Jersey common law, only the pre-amendment version of the WPL is relevant.

plaintiff to bring a wrongful discharge claim for his alleged wrongful termination based on his filing of a workers' compensation claim, as, in that case, there was a state statute that expressly prohibited employers from terminating an employee because the employee claimed or attempted to claim workers' compensation benefits from the employer. 85 N.J. at 670. Indeed, Plaintiffs' case here is instead comparable to the facts in <u>Alexander</u>, where the court found that terminating an employee for filing a lawsuit against his employer in an attempt to resolve a salary dispute did not violate a clear mandate of public policy. 208 N.J. Super. at 505. Plaintiffs' case is also similar to the facts in <u>Schwartz</u>, where the court found that firing an employee to avoid paying commissions does not violate a clear mandate of public policy. 224 N.J. Super. at 30. Like in both of those cases, where there were no statutes or regulations forbidding employers from terminating employees in retaliation for the employees' actions in those cases, here too, the WPL in its pre-amendment state did not prohibit employers from terminating employees in retaliation for complaining about allegedly unpaid wages. Further, like in <u>Alexander</u> and <u>Schwartz</u>, the matter at hand here is purely internal and has "no significance beyond the private interests of plaintiff and defendant." <u>Alexander</u>, 208 N.J. Super. at 508. One can easily see the difference between those types of cases, including Plaintiffs', and those where the plaintiff was fired for attempting to protect an important public policy, such as the plaintiff's filing of an OSHA complaint in <u>Cerracchio</u> to protect safety in the workplace. 223 N.J. Super. at 445-46.

Plaintiffs also assert that, even if the WPL cannot support their claims of wrongful discharge, their claims "remain cognizable under the <u>Pierce</u> framework as a violation of their agreed to contract." Pls.' Opp'n Br. at 15. In support of this assertion, Plaintiffs point to a section of the New Jersey Superior Court's opinion in <u>Cappiello v. Ragen Precision Indus., Inc.</u>, which states that: "It is not disputed that, although plaintiff's employment was at will, he had an

agreement with [the defendant] for the payment of commissions. Therefore, a breach of this agreement may be separately recognized as a basis for compensatory damages, even under Pierce." 192 N.J. Super. 523, 527-28 (N.J. Super. Ct. App. Div. 1984). Relying on this language, Plaintiffs argue that a Pierce claim for wrongful discharge can be supported simply by the fact that Defendants allegedly breached their agreement with Plaintiffs to pay them certain commissions. However, this conclusion is based on a flawed understanding of the court's explanation in Cappiello.

When the Cappiello court said that "a breach of [plaintiff's] agreement [with defendant for the payment of commissions] may be separately recognized as a basis for compensatory damages, even under Pierce[,]" id. at 527-28, it was simply explaining that a claim for wrongful discharge under Pierce is not inconsistent with a breach of contract claim. This is because the "Court [in Pierce] was specific . . . in noting that '[its] holding should not be construed to preclude employees from alleging a breach of the express terms of an employment agreement.'" Id. at 527 (quoting Pierce, 84 N.J. at 73). The court in Cappiello still understood though that, while a breach of contract claim and a Pierce claim can both be brought in the same action, they nevertheless have different elements. More specifically, "[a]n employee at will 'has a cause of action for wrongful discharge *when the discharge is contrary to a clear mandate of public policy* . . . .'" Id. (quoting Pierce, 84 N.J. at 72) (emphasis added). As such, Cappiello does not support Plaintiffs' assertion that a Pierce claim can simply be predicated on a contract violation. Indeed, such a conclusion would excessively broaden the availability of a wrongful discharge claim under Pierce and would turn it into a duplicate for breach of contract claims.

Therefore, because neither the WPL in its pre-amendment state nor the Defendants' alleged breach of their contract with Plaintiffs for payment of commissions can support a finding

that Plaintiffs' terminations violated a clear mandate of public policy, this claim by Plaintiffs necessarily fails. Further, since there is no indication that allowing Plaintiffs to replead this claim would cure these deficiencies, leave to further amend will not be granted and Count 4 will be dismissed with prejudice. See Grayson, 293 F.3d at 108.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part. To the extent that any counts are dismissed without prejudice, Plaintiffs shall be granted leave to replead these claims by filing a Third Amended Complaint.  An appropriate Order with be filed together with this Opinion.


  s/Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge


Dated: May 12, 2021